Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| JOSÉ M. RIVERA CARRASQUILLO<br><br>Parte Recurrida<br><br>v.<br><br>LYSMARIE MERCADO AGUIRRE<br><br>Parte Peticionaria | KLCE202500505 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala de Relaciones de Familia y Menores, Región Judicial de Bayamón<br><br>Caso núm.: D DI2024-0017<br><br>Sala: 4003<br><br>Sobre: Divorcio Ruptura Irreparable |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez.

Díaz Rivera, Jueza Ponente

## **R E S O L U C I Ó N**

En San Juan, Puerto Rico, a 24 de junio de 2025.

Comparece ante *nos*, Lysmarie Mercado Aguirre (Mercado Aguirre o peticionaria) y nos solicita que revisemos una *Resolución* emitida el 15 de abril de 2025 y notificada el 16 de abril de 2025, por el Tribunal de Primera Instancia (TPI o foro primario), Sala de Relaciones de Familia y Menores de Bayamón. Mediante dicho dictamen, el TPI declaró *Sin Lugar* la solicitud de reconsideración que presentó la parte peticionaria. Además, la parte peticionaria nos solicita que revisemos una *Orden* emitida el 7 de mayo de 2025, mediante la cual el foro primario declaró *Sin Lugar* la utilización del perito en la vista de alimentos.

Por los fundamentos que expondremos a continuación, se *deniega* la expedición del auto de *certiorari*.

Número Identificador

RES2025 _____

**I.**

Surge del expediente ante *nos* que, el 11 de mayo de 2023, Mercado Aguirre solicitó la revisión de la pensión de alimentos ante el foro primario. Consecuentemente, el 19 de septiembre de 2023, se celebró una *Vista para Discutir Informe.*[1] Luego de varios incidentes procesales, el 30 de enero de 2024, el foro primario emitió una *Orden* mediante la cual determinó que José M. Rivera Carrasquillo (Rivera Carrasquillo o recurrido) está obligado a informar todo ingreso, salario, dividendo o beneficio de las corporaciones. Así las cosas, el 5 de marzo de 2024, el TPI emitió una *Orden* mediante la cual determinó, entre otras cosas, que ¨[…] se establece que evidencia de cuentas de la corporación o corporaciones no podrá ser utilizada en caso de alimentos¨.

El 8 de marzo de 2024, se llevó a cabo una *Continuación de Vista Evidenciaria.* En dicha vista, el foro primario declaró *No Ha Lugar* la solicitud de la parte peticionaria para incluir los ingresos de las corporaciones a los fines del cómputo de la pensión alimentaria. Asimismo, el 16 de abril de 2024, el TPI celebró una *Vista Argumentativa,* mediante la cual concluyó, entre otras cosas, que ¨[…] los ingresos de las corporaciones per se no son descubribles en este procedimiento, pero si tiene que decir cuales son los ingresos personales que recibe de dichas corporaciones¨.

Posteriormente, el 15 de octubre de 2024, se ordenó el traslado del caso a la Sala de Relaciones de Familia y Menores de Bayamón debido a la relocalización de los menores a esa jurisdicción. Así, el 24 de enero de 2025, se celebró una Vista de Pensión de Alimentos ante la Examinadora de Pensiones Alimentarias (EPA). Ese mismo día, la EPA emitió un *Acta,* notificada

---

[1] Mediante esta el foro primario determinó, entre otras cosas, que para descorrer el velo corporativo de las corporaciones se necesita una vista evidenciaría donde se justifique y se pruebe al Tribunal unos elementos para hacer esa determinación, de lo contrario las corporaciones están protegidas.

el 31 de enero de 2025, mediante la cual determinó que: ¨no se admitirá en evidencia información financiera de las entidades corporativas. Lo único que la suscribiente considerará como ingreso imputable al alimentante, son los beneficios que recibe de las corporaciones, si alguno¨.[2]

Luego de varios incidentes procesales, el 14 de febrero de 2025, la EPA emitió un *Acta*, notificada el 20 de febrero de 2025, mediante la cual se reiteró en que no se admitirá evidencia alguna que tenga que ver con las operaciones de la o las corporaciones de Rivera Carrasquillo. Añadió que, solo se admitirá evidencia del ingreso que recibe y los beneficios que le ofrecen y que sean imputables como ingreso. Finalmente, determinó que en este caso no se ha descorrido el velo corporativo y tampoco se ha traído como parte a ninguna entidad corporativa.

El 13 de marzo de 2025, el TPI emitió una *Orden*, notificada el 27 de marzo de 2025. Mediante esta, el foro primario declaró *Sin Lugar* la solicitud de la peticionaria para incluir a las corporaciones como partes indispensables. Subsiguientemente, el 4 de abril de 2025, Mercado Aguirre presentó una *Urgente Solicitud de Reconsideración y Protección Constitucional*, en la cual impugnó la exclusión de las corporaciones del recurrido como partes indispensables. El 9 de abril de 2025, la parte recurrida presentó una *Oposición a Urgente Reconsideración y Protección Constitucional*. Entretanto, el 15 de abril de 2025, el TPI emitió una *Resolución*, notificada el 16 de abril de 2025. En la misma, el foro primario declaró *Sin Lugar* la solicitud de reconsideración que presentó la parte peticionaria.

Asimismo, el 15 de abril de 2025, la parte peticionaria presentó un *Urgente Escrito Informando Perito*, en la cual anunció la

---

[2] El 30 de enero de 2025, notificada el 31 de enero de 2025, el foro primario emitió una *Resolución* mediante la cual se acogieron las recomendaciones de la EPA.

contratación del perito José A. Díaz Crespo, CPA. Acto seguido, el 16 de abril de 2025, notificada el 22 de abril de 2025, el TPI emitió una *Orden* mediante la cual ordenó a la peticionaria informar el propósito de la utilización del perito y si era para la Vista de Alimentos ante la EPA. El 24 de abril de 2025, la parte recurrida presentó una *Oposición a Perito Anunciado*.

Ese mismo día, Mercado Aguirre presentó una *Solicitud Vista Evidenciaria y Protección de Violación a Derecho Constitucional [...]*, mediante la cual solicitó una vista evidenciaria para demostrar que están presentes los elementos necesarios para que las corporaciones de servicios profesionales pertenecientes al recurrente y utilizadas por este para prestar sus servicios médicos formen parte del descubrimiento de prueba con el fin último de que se fije una pensión alimentaria justa para los menores.

El 28 de abril de 2025, se celebró una *Vista* mediante la cual el foro primario determinó que, si el perito va a declarar sobre las corporaciones y descorrer el velo corporativo, en esta etapa de los procedimientos no procede. Luego, el 7 de mayo de 2025, el TPI emitió una *Orden* mediante la cual declaró *Sin Lugar* la utilización del perito en la vista de alimentos.

Inconforme, el 8 de mayo de 2025, la parte peticionaria compareció ante *nos* mediante un *Recurso de Certiorari* y alegó la comisión de los siguientes errores:

> *Primer Señalamiento de Error*:
>
> *Erró el Tribunal de Primera Instancia al denegar la inclusión en el pleito, como partes indispensables o terceras demandadas, de las corporaciones de propiedad exclusiva del alimentante, necesarias para poder computar el ingreso total sujeto a la obligación alimentaria de los menores.*
>
> *Segundo Señalamiento de Error*:
>
> *Erró el Tribunal de Primera Instancia al abusar de su discreción al exigir que, previo a poder solicitar la inclusión en el pleito de las corporaciones de propiedad*

*exclusiva del alimentante – necesarias para poder computar el ingreso total sujeto a la obligación alimentaria de los menores – se utilicen los mecanismos del descubrimiento de prueba en contra de entidades que no se han incluido en el pleito, y que se presente prueba bajo el estándar inaplicable de prueba clara, robusta y convincente, que no responde al propósito de búsqueda de la verdad ni al estándar de preponderancia de la prueba aplicable a procedimientos civiles, en este caso, para incluir a una parte en un procedimiento de alimentos.*

*Tercer Señalamiento de Error:*

*Erró el Tribunal de Primera Instancia al dar por culminado el descubrimiento de prueba y excluir al perito propuesto.*

El 19 de mayo de 2025, la parte recurrida presentó un *Memorando en Oposición a Expedición de Certiorari*. Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**I.**

**A. *Certiorari***

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023). Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León v. AIG*, 205 DPR 163 (2020); *Pueblo v. Díaz de León*, 176 DPR 913 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra.* Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León v. AIG, supra.* Es decir, la característica distintiva de este recurso se asienta en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). No obstante, la discreción judicial para expedir o no el auto de *certiorari*

solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari.* Véase, *Scotiabank v. ZAF Corp.,* 202 DPR 478 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación*, 165 DPR 311 (2005); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649 (2000); *Lluch v. España Service Sta.*, 117 DPR 729 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra.* En

lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari,* por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra.*

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago,* 176 DPR 559 (2009); *García v. Padró,* 165 DPR 324 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago,* 125 DPR 203 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* Véase, además, *Pueblo v. Rivera Santiago, supra; S.L.G. Flores, Jiménez v. Colberg,* 173 DPR 843 (2008).

**II.**

Habida cuenta de que el recurso ante nuestra consideración se trata de un *certiorari*, este tribunal intermedio debe determinar, como cuestión de umbral, si procede su expedición. En el presente caso, es la contención de la peticionaria que, incidió el TPI denegar la inclusión en el pleito, como partes indispensables o terceras demandadas, de las corporaciones de propiedad exclusiva del recurrido, necesarias para poder computar el ingreso total sujeto a la obligación alimentaria de los menores.

Además, señaló que erró el TPI al abusar de su discreción al exigir que, previo a poder solicitar la inclusión en el pleito de las corporaciones de propiedad exclusiva del alimentante – necesarias para poder computar el ingreso total sujeto a la obligación alimentaria de los menores – se utilicen los mecanismos del descubrimiento de prueba en contra de entidades que no se han incluido en el pleito, y que se presente prueba bajo el estándar inaplicable de prueba clara, robusta y convincente, que no responde al propósito de búsqueda de la verdad ni al estándar de preponderancia de la prueba aplicable a procedimientos civiles, en este caso, para incluir a una parte en un procedimiento de alimentos. Finalmente, esbozó que incidió el TPI al dar por culminado el descubrimiento de prueba y excluir al perito propuesto.

Como es sabido, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *BPPR v. SLG Gómez-López, supra.* No debemos obviar que, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago, supra.*

Así pues, puntualizamos, que el *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al., supra.* A esos efectos, la naturaleza discrecional del recurso de *certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones del foro primario, de cuyas determinaciones se presume su corrección.

Tras evaluar cuidadosamente el recurso presentado por la peticionaria, y luego de una revisión de la totalidad del expediente ante *nos*, es nuestra apreciación que no se configuran ninguna de las excepciones que justificaría la expedición del auto de *certiorari* al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones. Así, los fundamentos aducidos en el recurso presentado, no nos mueven a activar nuestra función discrecional en el caso de epígrafe. Esto, pues no nos encontramos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. Tampoco la peticionaria nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un fracaso de la justicia.

Asimismo, es menester destacar que los primeros dos (2) señalamientos de error fueron presentados tardíamente, pues habían sido atendidos previamente por el foro primario mediante la *Orden* del 13 de marzo de 2025.

Por lo tanto, resolvemos denegar el *certiorari* solicitado, pues no identificamos fundamentos jurídicos que nos motiven a expedir el mismo.

**III.**

Por los fundamentos antes expuestos, se *deniega* la expedición del auto de *certiorari*.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| JOSÉ M. RIVERA CARRASQUILLO<br><br>Parte Recurrida<br><br>v.<br><br>LYSMARIE MERCADO AGUIRRE<br><br>Parte Peticionaria | KLCE202500505 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala de Relaciones de Familia y Menores, Región Judicial de Bayamón<br><br>Caso núm.:<br>D DI2024-0017<br><br>Sala: 4003<br><br>Sobre: Divorcio Ruptura Irreparable |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez.

### VOTO DISIDENTE DE LA JUEZA GRANA MARTÍNEZ

Los alimentos de los menores son derechos y obligaciones que surgen del derecho constitucional a la vida. Están revestidos del más alto interés público. Diaz Rodriguez v. García Neris, 208 DPR 706, 717 (2022); Arguello v. Arguello, 155 DPR 62, 70 (2001); *Rodríguez v. Depto. Servicios Sociales, 132 DPR 617, 629 (1993); López v. Rodríguez, 121 DPR 23, 28 (1988).*

El interés público que acompaña este derecho es de tal magnitud que el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento. *Chévere v. Levis*, 150 DPR 525, 535 (2000); *López v. Rodriguez*, supra. Tan es así que, considerando la importancia del derecho de alimentos se ha reconocido una excepción a la prohibición constitucional de encarcelamiento[1] por deudas en los casos de alimentos.  Se ha

---

[1] ...Nadie será encarcelado por deuda. ...Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1.

Número Identificador
RES2025 _____

permitido por su alto interés público y el reconocimiento de que la obligación de proveer alimentos es de tan alta jerarquía, el encarcelamiento por deuda mediante desacato civil, lo cual constituye una excepción a la prohibición constitucional. Este encarcelamiento, más allá de forzar el pago de una deuda, procura obligar el descargo de una responsabilidad de mayor rango. *James Soto v. Montes Díaz,* 213 DPR 718, 731 (2024).

Ahora bien, por alimentos se entiende todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia. Cuando el alimentista es menor de edad, los alimentos comprenden también su educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales. 31 LPRA sec. 7531. Claro está, la cuantía de dicha obligación está supeditada a los recursos del alimentante y a las necesidades del alimentista. *Chévere v. Levis*, supra. Pero no hay duda alguna que, al determinar la capacidad económica de un alimentante para proveer alimentos, el foro no está limitado a considerar únicamente evidencia, testifical y documental, sobre ingresos. Puede además tomar en consideración al fijar la cuantía de la pensión, aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. *López v. Rodriguez,* supra, pág. 33.

En fin, el norte es indagar todo posible concepto de ingreso, conforme la amplia definición de este en la Ley Orgánica de la Administración Para el Sustento de Menores. 8 LPRA sec. 501 nota, et seq. Mediante dicha Ley se definen los ingresos como, cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos,

jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico; del Gobierno de Estados Unidos de América, el Distrito de Columbia; las Islas Vírgenes de Estados Unidos de América; o cualquier territorio o posesión sujeta a la jurisdicción de Estados Unidos de América, según lo permitan las leyes y reglamentos federales aplicables. Además, de cualquier estado de Estados Unidos de América, o de cualquier subdivisión política de los mismos, o de cualquier agencia o instrumentalidad de cualesquiera de las mencionadas entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad. **Asimismo, contempla los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.** Énfasis nuestro. 8 LPRA sec. 501 (20).

En *Chévere Mouriño v. Levis Golstein*, 152 DPR 492, 501 (2000) el Tribunal Supremo de Puerto Rico afirmó que resulta ineludible concluir que, en el proceso de fijar una pensión alimentaria para un menor, un tribunal no está limitado a considerar únicamente evidencia directa sobre gastos e ingresos, ya fuere ésta testifical o documental. Puede utilizar, además, evidencia circunstancial que le permita inferir, como parte de las necesidades

del menor, **el estilo de vida a que éste tiene derecho** a tenor con la capacidad económica y estilo de vida de su padre o madre alimentante. Véase además, *López v. Rodríguez,* supra.

En el caso ante nuestra consideración la peticionaria solicitó, al Tribunal de Primera Instancia que, se incluyeran como partes indispensables a las corporaciones Grupo Médico Otoao, P.S.C., Tuque Medical Services, P.S.C. y Otoao Realty Inc. Las partes estipularon que el recurrido es el único accionista de esa corporación.Lal peticionaria alegó que dichas entidades eran utilizadas para canalizar ingresos, ocultar bienes, y pagar gastos personales del alimentante, por lo que su inclusión resultaba esencial para determinar una pensión alimentaria justa y proporcional.

El foro primario consistentemente se ha negado, en varias ocasiones a permitir el descubrimiento del ente corporativo por no existir los elementos para descorrer el velo corporativo, respetando la personalidad jurídica e independiente de sus dueños. De igual manera ha dirigido a la peticionaria a utilizar los mecanismos del descubrimiento de prueba para descubrir y presentar prueba fuerte y robusta de que los intereses y la propiedad de las corporaciones y el alimentante están confundidos; que el alimentante cometió actos constitutivos de fraude o ilegalidad para evadir su obligación de alimentar y que existe una relación causal entre la utilización de la corporación como instrumento o alter ego y el fraude o acto ilegal. Fundamenta su proceder en *Alavarado v. Alemañy*, 175 DPR 672 (2000) y por su valor persuasivo el caso de Manuel Prats v. Branda Cruz Díaz[2].

---

[2] A pesar de que el TPI no incluyo la cita del caso, asumo que se refiere al KLCE202100767 resuelto el 25 de agosto de 2021.  En dicha ocasión la Sentencia fue escrita por la misma que escribe, como parte del panel integrado por el Juez Hernández Sánchez y la Juez Brignoni Mártir.  Los hechos son distinguibles del caso que nos ocupa.

La controversia en este caso se reduce a determinar, como la peticionaria puede cumplir con brindar al foro recurrido prueba clara, robusta y convincente para sustentar sus alegaciones, sin que se le permitiese el descubrimiento de prueba amplio y liberal sobre los asuntos corporativos.

Los mecanismos para permitir a las partes descubrir, obtener o perpetuar la prueba necesaria para sustanciar sus alegaciones en el acto del juicio se encuentran en las reglas de procedimiento civil. *Rivera y Otros v. Bco. Popular*, 152 DPR 140, 151 (2000) citando a R. Hernández Colón, *Derecho Procesal Civil*, San Juan, Ed. Michie de P.R., 1997, Sec. 2801, pág. 220. El objetivo es uno muy simple, que antes del juicio, las partes descubran toda la información relacionada con su caso, independientemente de quién la posea. Rivera y Otros v. Bco. Popular, supra, pág. 152; J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1985, Vol. II, pág. 123.

Así la regla 23.1 de Procedimiento Civil dispone que: El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue: (a) En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluso la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, información almacenada electrónicamente, documentos u otros objetos tangibles, y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible. … 32 LPRA ap. V.

La norma sobre el alcance del descubrimiento es que debe ser amplio y liberal. *Rivera y Otros v. Bco. Popular*, supra, *Aponte v. Sears Roebuck de P.R., Inc.*, 129 DPR 1042, 1049 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 743 (1986); *Ades v. Zalman*, 115 DPR 514, 518 (1984); *Rivera Alejandro v. Algarín*, 112 DPR 830, 834 (1982); *García Negrón v. Tribunal Superior*, 104 DPR 727, 738 (1976). Se reconocen dos limitaciones: que la información objeto del descubrimiento no sea privilegiada y que la misma sea pertinente a la controversia. *Rivera y Otros v. Bco. Popular*, supra, *Medina v. M.S. & D. Química P.R., Inc.*, 135 DPR 716, 730–731 (1994); *Ortiz Rivera v. E.L.A., National Ins. Co.*, 125 DPR 65, 70 (1989); *General Electric v. Concessionaires, Inc.*, 118 DPR 32, 38–39 (1986). Sobre la pertinencia, el concepto es mucho más amplio que el empleado en el área del derecho probatorio para la admisibilidad de la prueba. Alvarado v. Alemany, supra, pág. 682); *García Rivera et al. v. Enríquez*, 153 DPR 323, 333 (2001); *Medina v. M.S. & D. Química P.R., Inc.*, supra; *Ortiz Rivera v. E.L.A., National Ins. Co.*, supra, pág. 70 (1989); *General Electric v. Concessionaires, Inc.*, supra, pág. 40 (1986).

En relación con la amplitud del descubrimiento de prueba en casos de división de comunidad de bienes, el Tribunal Supremo de Puerto Rico reconoció y adoptó la tendencia doctrinaria en Estados Unidos, de reconocerle al excónyuge que no es accionista de una corporación el derecho al descubrimiento de la prueba, destacando el caso de Gerson v. Gerson, 372 A. 2d 374, 377 (NJ 1977). En este caso un ex cónyuge había aducido la personalidad jurídica distinta y separada de la corporación en la que poseía la mitad de las acciones como defensa para negarle el descubrimiento de la prueba al otro ex cónyuge. El Tribunal Superior de Nueva Jersey concluyó: "La forma corporativa no debe ser utilizada como un escudo detrás del cual las partes pueden ocultar activos de la intención de

nuestros estatutos de distribución equitativa. La forma de propiedad que un esposo elija para sus emprendimientos comerciales no debe privar a la esposa del descubrimiento al que de otro modo tendría derecho." Traducción nuestra. Alvarado v. Alemañy, supra .[3]

En el caso de Alavardo v. Alemañy, *Alvarado* había señalado al tribunal que no tenía en su poder los documentos pertinentes para demostrar la naturaleza del incremento en el valor de las acciones de una corporación creada mientras estuvo casada, conforme el régimen de sociedad legal de gananciales con Alemañy. Lo único que tenía era algunas planillas corporativas. Sostenía que, para probar la naturaleza del incremento en valor de las acciones, y si el mismo se debió o no a las fuerzas naturales del mercado, o por el contrario a la industria de los cónyuges, **era necesario tener acceso a los documentos corporativos, tales como los libros de contabilidad, estados financieros y libros de nóminas, entre otros.** Alemañy se oponía argumentando que el incremento en valor de las acciones de la corporación no se debió a Alvarado pues esta solo trabajo dos años y fue renumerada.

Al igual que el caso que nos ocupa, en el caso de Alvarado v. Alemañy, una de las partes siempre había sido el único accionista de la corporación, su presidente, gerente general y director. Para el tribunal dichos hechos fueron suficiente para considerar que existía una controversia real sobre el impacto que pudieran haber tenido los esfuerzos de ambas partes con respecto al incremento en el valor del negocio privativo. Por lo que concluyó, que la prueba que Alvarado interesaba descubrir no sólo era pertinente, sino, además,

---

[3] Véase, también: *Gellman v. Gellman*, 553 N.Y.S. 2d 705 (N.Y.A.D. 1 Dept., 1990); *Ruggiero v. Ruggiero*, 474 N.Y.S.2d 133 (N.Y.A.D. 2 Dept., 1984); *Lytton v. Lytton*, 289 So.2d 17 (Fla. 1974); *Elkins v. Elkins*, 249 So.2d 443 (Fla. 1971). En todos estos casos los respectivos tribunales permitieron la toma de deposiciones y la producción de documentos corporativos como mecanismos para el descubrimiento de la prueba, a favor de la parte que no poseía acciones en las corporaciones en cuestión. Alvarado v. Alemany, supra.

que estaba estrechamente relacionada con el asunto en controversia.

El Tribunal Supremo de Puerto Rico puntualizó que era patentemente erróneo resolver que Alvarado estaba obligada inicialmente a establecer que hubo un incremento en el valor de la corporación y que dicho incremento se debió a la industria, al esfuerzo y al trabajo de ella, para que entonces procediese el descubrimiento de prueba. Enfatizo y citamos, "No tiene mucha lógica ni sentido jurídico decir que es obligatorio demostrar prima facie la necesidad de un descubrimiento de prueba precisamente mediante la evidencia que se interesa obtener de ese descubrimiento. Debe tenerse en cuenta, que, si la peticionaria pudiera probar que el incremento en valor de las acciones corporativas se debió a sus aportaciones o a las de su exesposo, la sociedad de gananciales tendría un crédito a su favor, y la peticionaria no tendría necesidad de descubrir prueba, pues con lo ya probado habría establecido también los méritos de su caso." *Alvarado v. Alemañy*, supra, pág. 645. El Tribunal Supremo de Puerto Rico resolvió entonces, que Alvarado tenía derecho a descubrir la prueba en cuestión, sin la carga probatoria decretada por el foro apelativo para ello, aun cuando parte de dicho descubrimiento esté dirigido a la corporación, que es un tercero con personalidad jurídica propia.

Por otro lado, una vez establecida la cuantía de pensión alimentaria ésta puede variar en ciertas circunstancias, por lo que el pago de pensión alimentaria nunca es cosa juzgada. *McConnell v. Palau,* 161 DPR 734, 747–748 (2004). De igual manera, hay intereses supremos y hechos que justifican obviar la personalidad jurídica de la corporación en cuanto al descubrimiento de prueba. Se ha de mirar con suspicacia aquellos casos, como el que tenemos ante nuestra consideración en el que una persona natural es el

único accionista. *DACo v. Alturas Fl. Dev. Corp. y otro*, 132 DPR 905, 926 (1993).

De igual manera y por su valor persuasivo señalamos el caso *Giraud Jove v. Hernández Mora*, KLCE20140706 de 17 de julio de 2014 en donde un panel hermano de este tribunal[4] reconoció que las circunstancias particulares de ese caso inclinaban la balanza en favor del interés del menor por encima de los reclamos de la corporación y del recurrido quien sostenía que la información de la corporación era materia privilegiada y constituía secreto de negocio. El tribunal de apelaciones afirmo que; "la peticionaria no solicita información sobre, por ejemplo, la manera en la que Atlantic Dental ejecuta sus procedimientos dentales, ni los materiales que utiliza. Solo le requiere información económica, en el contexto de un pleito de alimentos de menores, evidentemente para cerciorarse de que no existen otros ingresos del recurrido que, distinto a la apreciación de esa parte, pueden ser imputables como tales para propósitos de la pensión. Abona a este interés el hecho de que surge del expediente que el recurrido declaró en su Planilla de Información Personal y Económica que su ingreso mensual neto era de $3,612.21. Sin embargo, obra en el expediente un informe preparado por Ricardo Feliciano Figueroa, C.P.A. con fecha del 28 de febrero de 2013 del cual se desprende ingresos muy superiores a los reportados en la planilla. Debe, asimismo, considerarse la alegación, basada en alguna medida en prueba de los planes médicos, relativa a confusión de ingresos propios y los corporativos. Son esas las circunstancias particulares que nos llevan a permitir el descubrimiento, sin perjuicio de la personalidad jurídica separada que se les reconoce a las corporaciones." Concluyó que procedía ordenar el descubrimiento de copia de las planillas contributivas de las

---

[4] Constituido por el Juez González Vargas, la Juez Nieves Figueroa y la Juez Rivera Marchand.

facturas a los planes médicos, así como las informativas recibidas en los últimos dos (2) años, copia del libro de contabilidad de la corporación y copia de los estados bancarios de los últimos dos (2) años, entre otros, entre otros.

De igual manera, incluimos por su pertinencia el caso de *Nazario Díaz, Ex partes*, KLCE200600739 de 12 de julio de 2006. Allí un panel hermano[5] en una controversia sobre alimentos que envolvía el descubrimiento de prueba sobre cierta corporación sostuvo lo siguiente; "[p]or el momento, como hemos ya establecido, al ser la corporación la única fuente identificada de ingresos del alimentante—como un negocio propio de un profesional al tenor de *López v. Rodríguez*—, debe ser traída al caso por "acumulación no indispensable" para dar un remedio más completo en este caso. Pero debe ser objeto de indagación y descubrimiento de prueba para determinar si existe una separación adecuada entre la entidad corporativa y el dueño; si la corporación descansa en un fundamento financiero adecuado; si reconocerla como persona jurídica asistiría a al peticionario Díaz Nazario en un intento de evadir la obligación estatutaria de revelar todos sus ingresos y las condiciones de su estilo de vida según la citada Ley para el Sustento de Menores y la jurisprudencia sobre el derecho de alimentos. Los alimentistas tienen derecho a descubrir toda esa prueba incluyendo la que pueda ocultarse—según las múltiples notas al calce citadas— en negocios propios de carácter profesional."

El resultado de aplicar la doctrina de descorrer el velo corporativo es suspender la exención de responsabilidad que generalmente asiste a los accionistas de una corporación con respecto a las deudas corporativas para hacer a los accionistas responsables de las mismas. En este caso ese no es el propósito por

---

[5] Constituido por el Juez Rivera Martínez, y los Jueces Aponte Hernández y Morales Rodríguez.

el cual se busca traer información de estas corporaciones al pleito entre las partes. La razón es una, sencilla, estas tres corporaciones, en las cuales el alimentante es el único accionista poseen información pertinente para calcular la pensión alimentaria. Y no la pensión a la cual el alimentante crea que sus hijos tienen derecho sino aquella que además de considerar las necesidades de losmenores, considera el estilo de vida a que estos tienen derecho a tenor con la capacidad económica y estilo de vida de su padre o madre alimentante. Para lograrlo hay que indagar en todas las fuentes de ingreso de los alimentantes. Y ciertamente, en esta ocasión en la cual las corporaciones aparentan ser propiedad exclusiva del alimentante existen razones de peso, de la más alta política pública para permitir cierto descubrimiento en las corporaciones a los fines de corroborar el ingreso del alimentante.

A mi entender tan noble fin no tiene que ver con rasgar el velo corporativo, sino con descubrimiento de prueba. Un descubrimiento de prueba amplio y liberal como lo reconoce la doctrina que le permitise a la peticionaria **tener acceso a documentos corporativos, tales como los libros de contabilidad, estados financieros y libros de nóminas, entre otros que permitan al foro examinar si efectivamente procede descorrer el velo corporativo por haberse utilizado la corporación para evadir un deber que la ley impone. Un deber que surge del derecho constitucional a la vida.**

Lo que se pretende es indagar en las corporaciones en las cuales el alimentante es el único accionista para constatar que verdaderamente no genera ningún ingreso o beneficio de estas. Después de todo resulta sorpresivo que una persona mantenga tres corporaciones con fines de lucro sin derivar algún tipo de beneficio.

Además, la preservación de la identidad jurídica de una corporación, conforme los hechos ante nuestra consideración, no

debe ir sobre el más alto interés público, el sustento de los menores. El derecho a recibir una pensión que permita el estilo de vida a que éste tiene derecho a tenor con la capacidad económica y estilo de vida de su padre o madre alimentante.

Por último, no se trata de "saciar un estilo de vida pretendido por la Peticionaria-Demandada, sin justificar los gastos y necesidades de los menores. Los menores de este caso tienen sus necesidades cubiertas con la pensión actual y le sobran miles de dólares a la demandada, los cuales no parecen ser suficientes." Este es el argumento que presenta el recurrido para solicitar la imposición de costas, sanciones y honorarios por temeridad a la madre. Los progenitores deben entender, antes de tomar la trascendental decisión de romper el vínculo matrimonial que, se divorcian los progenitores no los hijos o hijas. Y en aquella vital responsabilidad de solicitar y lograr que se imponga una pensión alimentaria en beneficio de los menores el progenitor a quien le toca representarlos ha de hacer su mayor esfuerzo para lograr no aquella pensión a la que él o la alimentante crea que tienen derecho, sino aquella que por ley les corresponde a los menores. No es la pensión que sea suficiente para lo que cualquiera piense, sea el juez, una de las partes o un tercero, que debe recibir un menor, sino aquella que le permita vivir acorde con el estilo de vida al cual tiene derecho, conforme la capacidad económica y estilo de vida de su padre o madre alimentante.

Cabe resaltar lo ya resuelto por el Tribunal Supremo de Puerto Rico a los efectos de que:

> "*las necesidades razonables de un menor cuyos padres son ricos pueden incluir cosas que pudieran ser consideradas como frívolas por padres de menos recursos económicos (*less well off*)*. Las necesidades y los lujos son términos relativos. Como bien se expresará en *Branch v. Jackson*, supra, es posible que un niño con nada más que un techo que le cobije, un abrigo y comida para mantenerlo saludable puede ser más feliz que un niño que tiene todas las ventajas

antes mencionadas, pero este hecho no menoscaba el derecho de los menores a recibir las ventajas que la situación económica de los padres permiten. Por otro lado, resulta claro, que, si los menores viven con la madre bajo su custodia, ella también se beneficiará de forma indirecta de algunas de las necesidades que se le suplan a los niños, como por ejemplo, vivir en una buena casa, tener un buen carro, disfrutar de viajes con los niños, entre otras. Esto, sin embargo, no es razón para limitar al menor en su derecho de tener una pensión cónsona con el ingreso y estilo de vida de su padre alimentante." *Chevere Mouriño v. Levis Goldstein*, supra, pág. 504-505.

En este caso, la búsqueda de la pensión que refleje los verdaderos ingresos del padre alimentante no debe ser penalizada de manera alguna. Es una obligación legal y moral que debería ser compartida por ambos progenitores.

Por tal razón disiento, hubiese expedido y revocado para permitir no solo el acceso a libros de contabilidad, estados financieros y libros de nóminas de la corporación sino también al perito que pudiera asistir al tribunal en la evaluación de la prueba que surgiese de un descubrimiento amplio y liberal Mas aun cuando el propio foro reconoció sus limitaciones en la evaluación de dicha prueba.

En San Juan, Puerto Rico, a 24 de junio de 2025.


Grace M. Grana Martínez
Jueza de Apelaciones